**J. C. STROUD et al., Appellants,**

v.

**Horace BRIDGES et ux., Appellees.**

No. 6772.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 27, 1955.

Rehearing Denied Feb. 17, 1955.

R. T. Bailey, Dallas, Johnson & Hathaway, Tyler, for appellants.

Lawrence & Lawrence, Tyler, for appellees.

DAVIS, Justice.

This is a suit by Horace Bridges and wife, Essie Bridges, appellees, (plaintiffs below) against J. C. Stroud and Vernon Stroud, d/b/a Tyler Baseball Club, appellants (defendants below), for damages for the death of appellees' son, Louis Bridges, who was killed when he fell backward from the top seat in the grandstand of the "Tyler East Texans" ball park and landed on his head on a concrete walkway several feet below; death was almost, if not instantaneous.

Appellants owned the Tyler East Texans Baseball Club and had the baseball park leased from the City of Tyler, and was in the business of providing that form of

public entertainment and for their benefit and profit and which invites the public generally to attend its games.

The accident occurred about 8:00 o'clock, P.M., July 28, 1952. Appellees alleged many acts of negligence with reference to the failure of appellants to provide a safe back rest or one sufficiently strong to prevent patrons from falling backward onto the concrete walkway; or, in the alternative, that said grandstand was defective in some manner unknown to appellees. Appellants leveled numerous exceptions to the petition, but the record fails to reveal that they were ever presented to and acted upon by the court.

Appellees alleged that they bought a ticket for the child on the night of the fatal accident, but the evidence fails to show the purchase of a ticket on that night. But the evidence does show that the child was wearing a T-shirt with the words "Tyler East Texans" or "East Texans" upon it which he had purchased at the J. C. Penney Store in Tyler through an advertising plan sponsored by appellants through their agent whereby any boy 12 years old or younger could buy such shirt and he would be admitted to any game he might attend in Tyler without having to purchase a ticket, providing he wore such shirt to the game.

Trial was to a jury which found that; (1) Appellants failed to provide a safeguard or safeguards sufficient to prevent the said Louis Bridges from falling through the back of the grandstand on the occasion in question; (2) that such failure was negligence; (3) that such negligence was a proximate cause of the fatal injuries of Louis Bridges; (4) appellants failed to keep the back rest behind where Louis Bridges was sitting securely in place to prevent his falling from said grandstand on the occasion in question; (5) that such failure was negligence; (6) that such negligence was a proximate cause of the fatal injuries sustained by Louis Bridges; (6a) appellants or their agents knew or by reasonable care could have known that they had failed to keep the back rests behind where Louis Bridges was sitting securely in place to prevent his falling from said grandstand on the occasion in question; (7) that squatting down or sitting on his feet and moving sideways down the seat by the said Louis Bridges while sitting on his feet on the occasion in question was not negligence; (9) it was not an unavoidable accident; (10) the pecuniary value of the amount of money if paid now, necessary to compensate appellees for the loss of the services they could expect of their child from the date of his death until he reached the age of twenty-one years, after deducting therefrom the costs and expenses of his maintenance for the same period of time, would be $2,250; and (11) that $5,500 would be equal in value to the contributions in pecuniary aid the appellees would have had a reasonable expectation of receiving from said child after he reached twenty-one years of age.

■ Appellants bring forward five points of error. The first point complains that the trial court erred in refusing to grant their motion for an instructed verdict because, they contend, the evidence was without dispute that Louis Bridges entered the grandstand on a "pass" and was therefore a "licensee" and appellants owed him no duty as such other than not to wilfully or wantonly injure him. The evidence in the case will not support that contention. We think the advertising plan was an outright invitation to all boys 12 years of age or younger to purchase such T-shirts for a consideration of $1.00 and not only wear them to the game, but also to wear them about the town and thereby advertise the appellants' business. First, it took from the boys a valuable consideration. Second, it resulted in a valuable consideration to the appellants. The record shows that the appellants had an advertising expert employed who made the deal with the J. C. Penney Store to sell that form of advertising. We do not feel that a more effective, appropriate and valuable space could be found to advertise the baseball business than across the chest and shoulders

of a bright, active and alert American boy, such as the evidence in this case showed Louis Bridges to be.

Appellants admit with commendable frankness that: "We have failed to find an identical fact situation in the Texas cases * * *" Neither has the court found such case. In 48 C.J.S. p. 763, an "invitee" is defined as: "An invited person; guest; a person to whom an invitation has been extended; one who is at a place on the invitation of another; one who possesses an invitation, *either express or implied*. The term implies *some mutual interest* or benefit between owner and invitee." (Emphasis supplied.) In the cumulative annual pocket part of 22 Words and Phrases, Invitee, under the subheading of "Patron of Amusement Places" several cases of other states are cited which we think are applicable here. Particularly the case of Carlyle v. Goettee, 64 Ga.App. 360, 13 S.E.2d 206, 208. These cases hold that a patron of a place of amusement for his pleasure and for the benefit or profit of the owner or operator occupy the status of an 'invitee.' "

Louis Bridges was not attending the ball game on a "free" pass on the night of his fatal injury. He, or his parents for him, had parted with a valuable consideration for the T-shirt bearing the label, "Tyler East Texans" or "East Texans." Such T-shirt was at least a semblance of a ticket. Unquestionably, from the record in this case, there was an enticement, or inducement, if not an outright invitation on the part of appellants for the child to attend the game for the child's amusement and appellants' benefit. Point one is overruled.

■ Point two complains of the action of the trial court in admitting in evidence appellees' Exhibit No. 1, a picture, which showed certain repairs had been made to the grandstand by affixing some "chicken wire" around where the child fell, subsequent to the date of the injury. It is admitted that the exhibit shows such repairs, but the record shows (p. 8, S/F) that, after the exhibit had been identified, counsel for appellees said: "We offer this in evidence, your Honor, as Plaintiffs' Exhibit # 1." To which counsel for appellants replied: "No objection." Later in the trial, appellants objected to the admission of the said exhibit because it did show the repairs and still later filed a written motion to exclude the exhibit from the consideration of the jury and the trial court announced: "All right. Defendants' motion to withdraw Plaintiffs' Exhibit # 1 from the consideration of the Jury is granted." Then he instructed the jury: Gentlemen of the Jury, Plaintiffs' Exhibit # 1 is withdrawn from your consideration, and you must not consider it for any purpose in this case."

We think the appellants waived any objection to the exhibit when they agreed for it to be introduced. See Sec. 18, McCormick and Ray on Texas Law of Evidence. Also Kempner v. Beaumont Lbr. Co., 20 Tex.Civ.App. 307, 49 S.W. 412, 413, error refused.

Then later in the trial, appellants proved on cross-examination of one of appellees' witnesses that the wire had been put there after the accident. Although the answer of the witness was not exactly in response to the question asked, appellants did not object or move that it be excluded. Point two is overruled.

■ By their third point, appellants complain of the action of the trial court in instructing the jury, in connection with Special Issue No. 11, that in arriving at its answer as to the value of contributions Louis Bridges would have made to appellees after he reached the age of twenty-one, that they might consider the ages and health of the appellees, because there was no evidence as to the health and ages of either of appellees, and in basing its judgment thereon.

There was sufficient evidence to support the submission of the issue without the consideration of the ages and health of appellees, and the complaint of the instruction was made for the first time on motion for new trial. If there had not been any evidence to support the submission of such

issue, the question could have been raised for the first time on motion for new trial. This is provided by the last sentence of Rule 279, T.R.C.P.

Appellants made no exception to the instructions given in the court's charge, before the case was submitted to the jury and their verdict returned. We want to emphasize the fact that the complaint is to the instructions and not to the submission of the issue. Being a complaint about the instructions it was necessary for appellants to object to same before the submission of the issues to the jury; and having failed to do so, the objection was waived. Rule 274, T.R.C.P. provides: "A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint *as to an instruction,* issue, definition or *explanatory instruction,* on account of any defect, omission, or fault in pleading, *shall be deemed waived unless specifically included in the objections.* * * *"* (Emphasis added.) Safety Cas. Co. v. Link, Tex.Civ.App., 209 S.W.2d 391, w/r, n. r. e.; Edwards v. Strong, 147 Tex. 155, 213 S.W.2d 979; Larson v. Ellison, 147 Tex. 465, 217 S.W.2d 420; Fisher v. Leach, Tex.Civ.App., 221 S.W.2d 384, w/r, n. r. e.; Moore v. Long, Tex.Civ.App., 234 S.W.2d 936; Harris v. Allstate Ins. Co., Tex.Civ. App., 249 S.W.2d 669; Dimmitt v. Dimmitt, Tex.Civ.App., 263 S.W.2d 648, error refused.

There is no complaint that the judgment is excessive. Appellants admit here that: "Actually the father died just a few weeks after the trial of this case. Apparently, appellees' attorneys knew of the poor physical condition of the father for they were extremely anxious to expedite the trial and also they obviously refrained from submitting any questions to him concerning his health." The point is overruled.

By their fourth and fifth points, appellants complain of the form of Special Issues Nos. 1 and 4, contending that such issues as submitted placed on appellants a greater burden than they were, in law,

charged with. We have carefully examined the special issues in the light of the pleadings and evidence and find that the points are without merit and are each overruled.

Finding no error in the record, the judgment of the trial court is affirmed.