22519.   OLD COLONY INSURANCE COMPANY v. DRESSEL et al.

ARGUED JULY 13, 1964—DECIDED OCTOBER 13, 1964— REHEARING DENIED NOVEMBER 5, 1964.

*Fulcher, Fulcher, Hagler & Harper, A. Montague Miller,* for plaintiff in error.

QUILLIAN, Justice. ■ The office of a special demurrer is to compel the opposite party to plead his cause or defense plainly, fully and distinctly. See *Code* § 81-101. By requiring a plaintiff to set forth the facts upon which he relies for recovery with requisite clarity and fullness two purposes are accomplished. First, the defendant is informed of the facts to which he is entitled in the preparation of his defense. Where the purpose of the special demurrer is for the single purpose of obtaining such information and it clearly and affirmatively appears from the record that the defendant had full knowledge of the information sought, prior to the trial, there is no hurtful error in overruling the special demurrer. *Aycock v. Williams,* 185 Ga. 585 (196 SE 54); *Glover v. Maddox,* 98 Ga. App. 548 (2) (106 SE2d 288). The second purpose of requiring the plaintiff to plead his case plainly and with reasonable fullness is to enable the demurring party and the court to ascertain whether the facts upon which the plaintiff predicates his cause constitute a cause of action, so that it may fairly appear from the petition whether it is subject to general demurrer. *Kemp v. Central of Ga. R. Co.,* 122 Ga. 559, 561 (50 SE 465); *Wrightsville & Tennille R. Co. v. Vaughan,* 9 Ga. App. 371 (2) (71 SE 691); *Porter v. Prudential Ins. Co.,* 82 Ga. App. 626, 631 (61 SE2d 797). In *Alford v. Zeigler,* 65 Ga. App. 294, 297 (16 SE2d 69), it is held: "The legitimate function of a special demurrer is to compel the pleader

to disclose whether he really has a cause of action or defense." When this is the object of the special demurrer the defendant is entitled to have the facts set forth with reasonable certainty and fullness, regardless of whether he has knowledge of these facts before the trial.

The defendant has no burden in urging a special demurrer to make it appear that he does not possess knowledge of the facts necessary for the plaintiff to meet the statutory requirements that he set forth his cause "plainly, fully and distinctly." Nor does the mere right of the defendant to inquire as to such facts by deposition or through pre-trial procedure debar the defendant's statutory right to demur specially to the petition. So we are constrained to hold that if the defendant in the present case was entitled to the information called for by its special demurrer, the fact that the record did not disclose whether it possessed such information prior to the trial would not render the overruling of the special demurrer harmless error. To correct the Court of Appeals' erroneous pronouncements of the rules of pleadings above discussed this certiorari was granted.

However, the exception taken in the petition for certiorari is to the judgment of the Court of Appeals in affirming the ruling of the trial judge overruling the special demurrer, not simply to the process of reasoning from which the judgment of affirmance resulted. This brings us to the pivotal question as to whether the ruling of the trial judge in passing upon the special demurrer was error. The petition meets the requirements of the statute, *Code* § 81-101, as stated in *Dumas v. Dumas,* 206 Ga. 767 (3) (58 SE2d 830): "The plaintiff, having plainly and concisely stated the material ultimate facts upon which she intends to recover, is not required to make an exhaustive statement of the exact evidence upon which she relies." *Martin v. Bartow Iron Works,* 35 Ga. 320, 322. In several well reasoned opinions of the Court of Appeals it is held that on a suit on an insurance policy a direct and explicit allegation that the loss was caused in the manner covered by the policy is not subject to special demurrer. *New York Life Ins. Co. v. Thompson,* 45 Ga. App. 638, 641 (165 SE 847); *Carlyle v. Goettee,* 64 Ga. App. 360 (13 SE2d 206); *American Fire & Cas. Co. v. Barfield,* 81 Ga. App.

887, 889 (60 SE2d 383). Here the policy provided for coverage on certain horses killed as the direct result of a windstorm. The paragraph of the petition demurred to reads that on a certain date "a certain horse, belonging to plaintiffs was killed as a direct result of a windstorm . . ." The demurrer is that the exact manner in which the horse was killed is not alleged nor how the windstorm caused his death, and that the allegation is too vague and indefinite and not supported by proper allegations of fact. Obviously the averment demurred to was not a conclusion of the pleader but a direct allegation of an ultimate fact.

■ The facts of the case are substantially stated in the Court of Appeals opinion, 109 Ga. App. 465, supra, and need not be repeated here, except perhaps one facet of the evidence not mentioned in the opinion of the Court of Appeals should be noted. When the plaintiffs' expert witness had testified as to the likelihood of a windstorm frightening the horse, counsel for the defendant propounded these questions and received the following answers from the witness: "Q. And pure bred horses are high strung more so than other horses? A. A good bit more sensitive I would say, yes, sir. Q. And any number of things can cause this type of horse to become scared. Is that true? A. To a certain extent, I would say yes. Q. Snakes would be one of them? A. Well, snakes and rats and things like that don't seem to bother them very much, as they are something they are more used to, but something that comes up unexpectedly is what they are more frightened of. Q. Then anything that would come up unexpectedly would cause a horse, especially this type of horse, to become excited and to run about? A. As a rule, yes, sir. Q. Have you ever known a horse to run into a fence and break its neck? A. Not to break his neck, but we have had that happen quite often if they get excited, and especially when there is a windstorm coming up, rain, wind, hail or anything like that they will come running to the barn, and lots of time they will run through the fence, but I have never had one to go this far with it, no. Q. And you call that when it becomes alarmed at something, that is, spooked? A. I don't know exactly what you would phrase it as but if things get to blowing

they will get excited. Q. And they get excited when other things happen too? A. Well, to some extent. Q. If some unusual wild animal were to get into an enclosure where a horse was of this type, that would cause a horse to become scared? A. Well, I don't know because we don't have that. Around a stable like this we don't have that. It is not very often you would have anything like that, very seldom anything like that. Q. But if it did happen it would scare the horse? A. I couldn't say as to that because I never saw that happen."

We think that, while the evidence was not entirely conclusive, the Court of Appeals correctly ruled that it measured up to the standard: "Where the circumstances shown do, as a matter of law, in some appreciable degree tend to establish the hypothesis claimed, and in the minds of the jury preponderate to that hypothesis rather than to any other reasonable hypothesis, this is the equivalent of excluding all such other less probable hypotheses. In other words, the jury could not find that circumstantial evidence of real probative value preponderated in favor of one theory as against all other reasonable but less probable theories, without excluding the theories thus rejected. In neither criminal nor civil cases is it required that the proved circumstances shall show consistency with the hypothesis claimed and inconsistency with all other reasonable theories to the point of logical demonstration." *Sixth Street Corp. v. Daniel,* 80 Ga. App. 680, 684 (57 SE2d 210). The Court of Appeals also cited the rule well expressed in *McCarty v. Nat. Life &c. Ins. Co.,* 107 Ga. App. 178 (2) (129 SE2d 408), that: "Where a plaintiff in a civil case supports his case solely by circumstantial evidence, before he is authorized to have a verdict in his favor the testimony must be such as to reasonably establish the theory relied on. There must be more than a 'scintilla' of circumstances to carry the case to the jury. It is for the court to say whether the circumstances reasonably establish the hypothesis relied on by the plaintiff." However, we do not think any theory or hypothesis was shown by the evidence except that the insured's horse was frightened by the windstorm and in running about the lot, as a result of such fright, broke its neck. The fright being the consequence of the windstorm there was,

as held by the Court of Appeals, sufficient evidence to support the finding that the horse's death was the direct result of a windstorm.

The theories that counsel for the defendant suggested and sought to support by the testimony of the expert witness were not supported by evidence at all. The hypotheses espoused by the defendant's counsel were rejected by the witness. One was that snakes might frighten the horse. Not only was the evidence completely silent as to the presence of snakes around the barn or lot where the horse was quartered but the witness testified that snakes would not likely frighten the horse. The other theory that a wild animal might have frightened the horse and caused it to break its neck in running about the lot was met with the witness's testimony that there were no wild animals in that vicinity. Mere unsupported suppositions or conjectures are not reasonable hypotheses that need be considered by the jury.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents on the ground it was error to overrule the special demurrer.*

DUCKWORTH, Chief Justice, dissenting. I dissent on the ground that it was error for the Court of Appeals to affirm the ruling of the trial court in overruling the special demurrer. The demurrer was good, and the plaintiffs should have been required to furnish the factual information as to the manner in which the horse was killed and how the windstorm caused his death. When the plaintiffs are thus called on by special demurrer to allege essential facts which are necessary to the defendant's defense, these facts must be averred. The death of the horse is not the only ultimate fact, and the plaintiffs' petition did not "plainly, fully and distinctly" set forth the cause of action.